RIVES, J.
It is essential to the proper consideration of these causes to acquire precise ideas of the state of the pleadings, the force of the proofs, and the real nature of the transactions to which they relate. A common principle underlies them; and though a slight diversity of circumstances may distinguish them, it will be found, on examination, to constitute no ground for practical distinction in the disposition to be made of them.
The pleadings are the same in all the cases. They are actions of debt by the payees of promissory notes against the makers. The defence is usury. The contract of indebtedness declared on, is a plain and complete promissory note, and has no other parties to it upon the record but the maker and payee. The action is founded on this privity of contract; the right of recovery grows out of the note alone; the defence is predicated of the invalidity of the note; and the record admits no “lis mota” except between the immediate parties to this written contract. If, therefore, the rights or interests of any third party are affected by this litigation, it must be outside of the pleadings, and arise out of the proofs.
Bet us then examine these latter critically, and see if they establish any fact calculated to impart to the pleadings, and the issue made by them, any effect different from that which legally and properly attaches to them. The “facts are prefaced in the bills of exceptions taken to the instructions refused, and the instructions given by the court on the trial. The chief distinctive feature consists in the fact that these notes were originally payable to -- — ■, and that the blanks were not filled until the discount, and then with the names of the respective payees. That in the first of these cases, the names were inserted by the witness, who was acting as the agent of the makers in raising money upon the notes, in the second, by the clerk of the payee, and in the third, by one of the payees, is wholly immaterial; for clearly it is to be taken as done in every case with the assent of the payees, and stands on the same ground as if the payees had inserted their own names with their own hands in these respective blanks. It is a fact common to all these cases that the discount upon the notes was usurious.
In the case of lenders, Sutton & Co., the statement of the witness B. W. Green is, “that the notes sued on were given to him by Joseph Brummel & Co. to raise money upon, the names of the payees being left blank; that the witness inserted the names of the plaintiffs as the payees in the said notes; he did not remember at what time he did so, but infers that he did so when he passed the said notes to the plaintiffs,, as it was done in his (the witness’) handwriting ; that the witness passed the said notes to the plaintiffs; that the plaintiffs were in the habit of taking the notes of the said Joseph Brummel & Co. from the said witness at a greater rate of' discount than six per cent, per annum,” &c. It will be seen that this statement does not explicitly disclose for whom the money was raised upon these notes — whether for Brummel & Co., or for the witness Green; but as no claim or title is asserted by the latter as the holder or owner of these notes, the inference is irresistible that he was acting as the agent or friend of Brummel & Co. in this negotiation. As this evidence is “certified by way of showing the relevancy of the instructions asked, we are warranted in having recourse to the language of these instructions to relieve ourselves Of this ambiguity. Accordingly, we find in the second instruction this recital : ‘ ‘That said Green, acting on behalf of the defendants, sold the said notes to the plaintiffs.” The terms, also, of the court’s instruction, import the existence of this agency: “If the jury believe, from the evidence, that the notes declared on in this cause were made by the defendants for the purpose of being sold, leaving the names of the payees blank, and were given by them to B. W. Green to be sold,” &c. ; thus distinctly implying, as it seems to me, that the notes were to be sold for the benefit of the defendants, and by Green as their agent. It seems to me, therefore, to result from this certificate of facts, that Green was acting as the agent of Brummel & Co. in raising money upon these notes for their benefit; and that there is no pretence for considering him as the holder or owner of this note and the seller thereof for his own use.
There is none of this doubt about Hill’s case. Green becomes Hill’s agent for the procurement of this note, and pays the proceeds to Brummel & Co. The statement is, 1 ‘that the said Hill met the said Green on the street, and asked him if he had any of Brummel & Co.’s notes; that he .wanted to buy one; that Green replied that he could get one, and then went to Brummel & Co.’s office and got the said note for him; and that he never passed any other note of said *852 •defendants to the said Hill. Being'asked who filled, up the blank for the name of the 'payee, witness said he passed it to Hill Without the blank being filled,, but that he thought it was filled,up by Mr. Johnson, who was in Hill’s employment. Witness further stated that he paid the proceeds of the note to the defendants, after it was thus taken by Hill, and that the deduction was over one per cent, per month.” In this case, then, ' if the maxim, *“qui facet per alium, facit per se,” be not obsolete, the dealing was virtually between Hill and Brummel & Co.; Green was the agent of Hill in the transaction, and not of Brummel & Co., as in the preceding case.
In the last case, Gray’s sons purchased the note at a usurious discount of a broker, being blank as to payee, and filled the blank with their own names, upon an assurance by the broker that “the note had been given by the defendants for wheat, which they had purchased from a person who wanted to leave town, and who had left it there to be sold.” .
Bet us now enquire how we are to regard these diversities in the mode of acquiring these notes, and whether they demand the application of different principles in their decision. It must be conceded that the de-fence of usury is perhaps clearer in Hill’s case than in the others, because there the dealing or negotiation is directly between the "payee by his agent, and the makers. But in my view, all these diversities are merged and obliterated by the legal consequences of the act of the payees in filling the blanks with their names. But before proceeding to develop and sustain this idea, 1 must now take up the third branch of my enquiry, namely, .as to the real nature of these transactions in raising money upon notes blank as to payee.
The elementary definition of a promissory note requires certainty as to the payee. 1 Parsons on Notes and Bills, chap. Ill, § 1, p, 30. This rule is. strictly adhered to. In Gibson v. Minet, 1 H. Bl. 569, Byre, Ch. J., said: “If I put in writing these words, ‘I promise to.pay ^500 on demand, value received,’ without saying to whom, it is waste paper. If I direct another to pay ^500 at some day after date for value received, and do not say to whom, it is waste paper.” These notes, when discounted through the agency of Green on behalf of Brummel & Co. in the first case, of Hill in the second, and through the agency *of the broker in the third, being blank as to the payee, were incomplete and waste paper till filled with the names of payees. It is not doubted that it is competent to the drawer of a bill or the maker of a note to emit it with such a blank, the effect of which would be to authorize any bona fide holder to insert his own name. Thus, in Cruchley v. Clarence, 2 Maule & Sel. R. 90, Lord Ellenborough, C. J., said: “As the defendant has chosen .to send the bill into the world in this form, the world ought not to be deceived by his acts. The defendant, by leaving the blank, undertook to be answerable for it when filled up in the shape of a bill.” Be Blanc, J., treated it “as if the defendant had made the bill payable to bearer;” andBayley, J., said: “The issuing the bill in blank, without the name of the payee, was an authority to a bona fide holder to insert the name.” To the same effect is the case of Crutchly v. Mann, 5 Taunt R. 529, where it was held, that a bill made payable to the order of —-—, may be filled up by any bearer who can show that he came regularly to the possession of it, with his own name. But until the blank is filled up, the instrument is invalid. Seay v. The Bank of Tennessee, 3 Sneed’s R. 558. In other words, it is an inchoate instrument, whose ultimate validity must depend on its passing to some person legally entitled to insert his own name in the blank. As contended for in argument, it is somewhat analogous to a note payable to maker’s own order before his endorsement thereof. After it is endorsed and put into circulation 'by the maker, it becomes, in effect, a note payable to bearer; but before that is done, and while retained by the maker, it has no vitality, and is nothing more than waste paper. There seemed to be an incongruity in the idea of a note payable to one’s own order; hence in Brown v. De Winton, 6 C. B. 336, 60 Eng. C. L. 335, the judge, delivering the opinion of the court in that case, doubted “whether, if a man *makes a note payable to his own order, he can, with propriety of language, be said to have made a promissory note at all. No man can make a contract with himself; there ought to be two parties to a contract; and in case of a promissory note, there ought to be a promisor and promisee.” Proceeding further, however, in the analysis of such a note, he concluded that “an instrument so drawn is an incomplete instrument, being in the nature of a conditional engagement, in case he should afterwards endorse the note, to pay it to the person to whom, by such endorsement, he should direct it to be paid. Such an instrument is of no legal or binding effect, until something further is done to give it validity. It is another question what is the nature of such an instrument after it has been endorsed and put into circulation. As no particular form of words is essential to form a valid promissory note, such an instrument, if endorsed to G. S. or order, imports a promise to pay1 G. S. or order the money therein mentioned. And if the maker of such a note endorses it in blank and circulates it, he must, we think, be considered as engaging to pay the amount to any person who may be the lawful holder of it for value; that is, in effect, to the bearer.” Assuming, then, the correctness . of this analogy, and the pertinency of this authority, I am ’justified in treating these notes, while the blanks are not yet filled, as “incomplete instruments, in the nature of conditional engagements to pay them, when filled up, to those who shall become *853 bona fide holders of them, and so entitled to insert their names, but as of “no legal or binding effect” till consummated by the indication of a certain payee, and the completion thereby of the note itself. The filling the blanks is that “something further which must be done to give these notes validity. ’ ’ But who now shall be regarded as authorized to fill these blanks with his name? No one but a bona fide holder; not a finder, who gives no consideration; *nor a thief, whose possession is felonious ; nor, by parity of reasoning, a person whose mala tides consists in his violation of law.
Having thus sought to ascertain and fix the character and legal import of these notes when put upon the market, I now recur to that prominent fact which, as I have already said, appears to me to render of no significance the difference of circumstances attending the acquisition of these notes. That fact is the act of the parties in constituting themselves the payees, and thus dealing directly, without any remove, with the makers. They must be held to be bound by the legal consequences of this act. Their ignorance of such consequences, if it existed, will not and cannot avoid them. Besides, it is difficult to suppose that men of business, practically informed of the jealous care with which the courts seek to suppress every form or shift of usurious dealings, could have misinterpreted the effect of inserting their names into these blanks. They must have known and felt that they were thereby perfecting a written obligation previously of no binding effect, and making themselves parties in such way to the contract as to subject themselves to the liabilities of a direct negotiation with the maker or borrower, and thus forfeiting all opportunity of varying the written contract by parol proof inconsistent with its obvious import or effect. They must have known that a pretended purchase of the maker of his own note would be but a very poor and insufficient disguise to shield them from the imputation of usury. Why, then, did they place themselves in this attitude, and accept the position by this form of writing of close and immediate privity with the needy borrowers? They ought to have said to Green and the broker: “It would be a very poor and flimsy device to pretend to buy these notes of the makers; the law construes it as a loan of money on the note, and it is immaterial whether the note precedes, *or, as is more usual, follows the advance of money; and, therefore, it will not do for us to put our names in these blanks and thus deal with the makers in these transactions ; give vitality to this blank paper by getting some other person to consummate it as payee, or send it after the alleged purchaser of wheat for his name; and then we can buy it as a perfected note and the legitimate subject of a sale; but, before this be done, for us to assume the relation of payee to the makers would prevent us from taking the notes except at full value. ” Such, it seems to me, would be the conduct and language in these cases of men at all conversant with business, and with the conditions of permissible trade in paper, or what is familiarly termed shaving.
This particular aspect of this enquiry is illustrated by the character of the pleadings, which to this end I specially set forth and distinguished at the threshold of this investigation. Under these pleadings, and the issue to which they lead, there arose but one question, and that was, what was the consideration paid for these notes. It would have sufficed for the defence to put but one solitary question to the witness Green, and that was to ascertain the amount of the discount. If that was usurious, the controversy was closed, and the case stood forth as a naked and indisputable one of usury. The plaintiffs would have been estopped from the proof of facts variant from the contract declared on; and the court would have been bound by the pleadings and the proofs to declare the note void for the usury. Had the case then been brought to this court upon such a record of pleadings and proofs, I cannot doubt that such a judgment would have met a unanimous concurrence here. Is the case at all changed by proof that the note was blank and incomplete till the plaintiffs gave it life by the insertion of their names? It can only be because the note was marketable and purchasable *when in the hands of the makers’ agents, whether private or public; and I have endeavored to show, by the analyses of the pleadings, proofs and the transaction itself, that it was not the subject of a sale, and that by accepting and filling it up as payees the plaintiffs below chose to take it for the money advanced or loaned. It will not be contested that there is no one here but the payees, who affect to be the first and the only holders. The makers could not have been holders; and Green, as the agent of the makers with Enders, Sutton & Co., and in Hill’s case, if not the agent of Hill, as I suppose him to have been, at least the intermediary between Hill and the makers, did not pretend to be a holder for himself. The broker, in Gray’s sons’ case, asserted no title as holder, but rather his agency for an unnamed holder for value on a sale of wheat. In all these cases, then the plaintiffs below were the first holders. But, unfortunately, there is an ineradicable vice in their title. They were not, as the law requires them to be, bona fide holders. The note sprung from a' usurious dealing. In its original form it was a blank piece of paper; and to adopt the forcible language of Judge Roane in Taylor v. Bruce, Gilm. 88-9, I may add that, ‘ ‘as an effective note, it was coeval with and only ushered into existence by the usurious contract, and was only delivered to the appellees as an evidence of that contract.”
Now in regard to questions of this character, they fall within the province of the court for determination. What shall be deemed usury, is a question to be determined *854 by the court. Whether a transaction is a loan or a purchase, is an inference of law, which the party is not competent to swear to. Roane, J., Gilm. p. 83. In Whitworth v. Adams, 5 Rand. 333, Judge Carr, p. 340, said: 1 ‘In a special verdict the jury need not find the usury; they find the facts, and the law infers the usury; and cited Chesterfield *v. Janssen, 2 Ves. R. 147; Gibson v. Fristoe, 2 Call 62; and Marsh v. Martindale, 3 Bos. & Pull. R. 153. In a still later case of Brockenborough’s ex’ors v. Spindle’s adm’rs, 17 Graft. 21, the same principle is again announced with great clearness and distinctness. Having the facts, therefore, certified in this case, our province and duty is to declare whether they constitute usury. We are not precluded from our judgment on the facts by the very common subterfuge of avoiding a treaty for a loan-, and cloaking it under the guise of a sale; we must tear away the veil thrown over the transaction, and look through the forms under which the parties carried on their forbidden dealings, to detect their real nature. In the performance of this task for myself, I have reached the conclusion that these notes are void for the usury that tainted them in their inception. It might have been otherwise, had the appel-lees observed the precaution of putting others in- their place as payees, and taking and holding as endorsees of such third parties in the absence of any corrupt bargaining with the makers, and any guilty knowledge on their part of this illicit mode of raising money on one’s own notes for one’s own benefit. I .am at a loss to discover in the proofs any foundation for the pretension of the appellees to claim under endorsement. There was none such; it is wholly factitious; their title rests exclusively on delivery from the makers or their agents, <and their election-to take not as • endorsees, but as payees. I was, therefore, surprised at the pains taken by the appellant’s counsel to divest his adversaries of these Protean shapes. Whether I regard the pleadings or the transaction itself, there seems to me no just pretence for saying that the title of the appellees is, in any respect or upon any hypothesis, different from that of mere payees. Any such claim would be, it must be confessed, extremely shadowy and unsubstantial, as no human wit could discern from the proofs of *these causes, the person or persons, of whom they were the endorsees. But it is said that my decision of these causes militates against the cases of Taylor, adm’r of Holloway v. Bruce, Gilm. 42, and of Whitworth & Yancy v. Adams, 5 Rand. 333, and that we are constrained by the authority of these cases, to sustain the rulings of the court below. To this, I cannot assent. I accept the authority of those cases; and hold that their reasonings are in entire accordance with my positions. They fortify rather than oppose my views. In fact, I beg leave now to resort to them as armories from which I can draw the most effective weapons in my defence. Our first enquiry, then, must be directed to the precise character of these cases. In the first, the makers of an accommodatipn note with good endorsers, placed it in the hands of a broker for sale; and its purchase at a usurious discount in the absence of proof that the purchaser knew these facts, namely - — the invalidity of the paper as between the parties and the agency of the broker — • was adjudged to be free of usury. The second was the case of an accommodation note, given to the payees for their accommodation, endorsed by them, and then placed in the hands of a broker for-sale, and sold by him at a usurious discount; it was held that such purchase was not usury, the purchaser not knowing that it was accommodation paper or for whose benefit it was sold. It is observable that these cases are very unlike the present. Those notes were certainly ' complete in form; and the purchaser’s title was that of endorsee. Here the notes were incomplete, and the plaintiffs sued as payees. True, the dissenting judges in those cases treated those accommodation notes as between the original parties as without consideration and invalid, and as in that sense inchoate and dependent for final validity upon delivery to a bona fide holder for value. But if .this view was not sustained in *the judgment of the court, it by no means follows that the notes now under our consideration, blank as to payees, and therefore dissimilar from those, may not justly be characterized as incomplete and conditional, and not, therefore, in that form, the subject of sale or traffic. This palpable distinction obviates the pertinency of those authorities to the questions we are now considering. But I claim that the opinions of the judges who concurred in the judgment of the court in those cases, fully concede and establish everj* position for which I now contend. To show this, I submit the following quotations from those opinions. In Taylor, &c., v. Bruce, Judge Coalter (p. 60-1,) said: “It is true that the defendant admits in his answer that he received the notes at a discount, which would be usury, if the transaction had taken place in consequence of a personal interview between him and the makers, as is alleged in the bill, whether a loan of money had been mentioned or not.; there being no difference between the execution of a note before the money is advanced, and the pretended sale of that note by the maker at a usurious discount, and the execution of such note afterwards ' in order to secure the money advanced with usurious interest. The former would be clearly a shift to evade the statute. It would be no answer for the party to say, that there being nothing said about a loan, he considered it a fair purchase of a note in market. He must know, in the case supposed, that the note was given for no other consideration but that of the money advanced,” &c.
In Whitworth, &c., v. Adams, Judge Cabell used language which seems to me to cqrroborate the views ! have taken, and to
*855 concede all the positions for which I contend. He admits (p. 411) that “if the purchase had been made directly from the principal, it would be clear usury, because the note being merely for accommodation, was *not, as between the parties to it, the evidence of any subsisting debt. It was consequently, as to them, not an available note, nor could any action as between them be maintained upon it. It has no legal existence till it is negotiated for value. And if it be negotiated ■directly for the party for whose accommodation it was made, to a person acquainted with the facts of the case, on a contract to receive for it less than its nominal amount discounting the legal interest, it would not differ in any substantial respect from the present advance of money on a contract that, in consideration of the advance, the person receiving it should give his obligation to the party making the advance to pay him at a future day, a sum greater than the sum received and legal interest. This last transaction would be a direct loan at illegal interest; and as the negotiation of the note, under the circumstances supposed, does not differ from it, the law infers that the party really intended a usurious loan, and resorted to a sale of the note as a shift or device to conceal it. He is advancing his money to the very man whose bill or note he gets; and the bill or note had no legal obligation whatever until he received it. The substance and nature of such a transaction is nothing more than a loan, at more than legal interest; and the bill or note is a security for it.”
If, now, it be true, as I have contended, that these notes had no legal obligation till the payees received them and inserted their names in the blanks, and that such payees are thereby shut up and bound to a direct privity of dealing with the makers, I am justified in invoking the opinions just quoted to aid me in stripping from these transactions the thin disguise of a sale. I can say with Judge Coalter that “the ap-pellees must have known that the notes were given for no other consideration but that of the money advanced;” and with Judge Cabell,, “that they were advancing their money to the very firm whose notes sthey got; and that the notes had no learal obligation until they received them: hence the substance and nature of the transaction was nothing more than a loan at more than legal interest, and the note a security for it.”
When shall it be said that these notes were issued? not surely when in the possession of the makers or their agent to raise money upon them, and while they were loosely floating in the market as blank notes awaiting completion in the act of transfer or negotiation; but rather in the language of Bayley, J., in Downes v. Richardson, 7 Eng. C. L. R. 227, “they were issued as soon as there was some person who could make a valid claim upon them;” and this was only when the appellees filled the blanks with their names and thereby took upon themselves the relation, rights and liabilities of payees. While the makers, their agents or strangers held this paper in its blank form, it imposed no obligation ; it was a mere preparation to raise money; but when its character was stamped upon it by its completion or the filling of the blanks, then it partook of the nature of the contract out of which it arose, and if that was usurious, it became void in its inception. And where a note is not available till discounted, and is discounted at a sum greater than the legal interest, it is usurious and void. Powell v. Waters, 8 Cow. R. 669.
Parsons, in his treatise on Mercantile Daw, ch. xiv, % iv, p. 265, proposes a test for the determination of questions like the .present, which would dispose of these cases in accordance with my views, upon a principle plain and easily applicable. To prevent misapprehension, I quote the whole passage: “There are, perhaps, no questions in relation to interest and usury of more importance than those which arise from the sale of notes or other securities. In the first place, there is no doubt whatever that the owner of a note has as good right to sell it for the most he can get, as he would have to sell any goods or wares which he *owned. There is here no question of usury, because there is no loan of money, nor forbearance of a debt. But on the other hand, it is quite as certain that no one has a right to make his own note and sell that for what he can get; for this, while in appearance the sale of a note, is in fact the giving of a note for money. It is a loan and a borrowing and nothing else. And if the apparent sale be for such a price that the seller pays more than legal interest, or, in other words, if the note bears interest and is sold for less than its face, or is not on interest and more than interest is discounted, it is a usurious transaction. Supposing these two rules to be settled, the question in each case is, under which of them does it come, or to which of them does it draw nearest?
“We are not aware of any g-eneral principle so likely to be of use in determining these questions as this: If the seller of a note acquired it by purchase, or if it is his for money advanced or lent by him to its full amount, he may sell it for what he can get; but if he be the maker of the note or agent of the maker, and receives for the note less than its face after a lawful discount, it is a usurious loan. In other words, the first holder of a note (and the maker of a note is not, and cannot be, its first holder) must pay the face of the note or its full amount. And after paying this, he may sell it, and any subsequent purchaser may sell it as merchandise.”
Applying this test to the cases at bar, the first holders, and none can be such, as I have endeavored to show, but the payees in these cases, must give full value, and thus meet the condition of bona tides. If this were not so, a strange incongruity would arise. Usury by the first holder va *856 cates and destroys the title of any subsequent holder; the note itself being- usurious, is void by the statute in the hands of an innocent holder without notice; it cannot, therefore, be valid in the hands of the payee and void in *the hands of his endorsee; if void in the hands of the latter, .it is for a stronger reason void in the hands of the former. It is, therefore, most justly held, that the holder entitled to fill the blank in notes ■ like the present, must be a bona fide holder; a holder for full value, and untainted by usury, so that he may then sell it, like any other commodity, for what he can get; and .that the best practical test for determining such questions will be found in the general principle thus laid down by Parsons.
It was a boast of X,d. Mansfield in Floyer v. Edwards, Cowp. R. 112, that “where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute.” The same jealous care to uphold and vindicate this statute, which was evinced by this remark, ran through the early decisions of the courts in the administration of this statute. But it is curious to observe how it has been impaired by the commercial spirit of the age, and has yielded steadily to the popular theory that money is, like any merchandise, worth what it will bring and no more, and that its value should be left to fix itself in a free market. But still while the statute exists, and demands enforcement from the courts, I accept the authority of these. decisions as founded in justice and wisdom, and am not disposed to relax any of the rules against these extortionate and illicit practices. It is, perhaps, an idle attempt to withstand these judicial expedients to unfetter the traffic in money; they have already removed many of the restraints from the usurer; and I must confess my inability to discern any effective ones that will be left, when the ’ needy can put upon the market their notes blank as to payees, and raise money upon them by sale to any one, at usurious rates, who will put his name in the blank and take the relation of payee. It will be a vain thing to say that a man cannot sell his own note, when the only thing required of him to effect this object will be to send it out *blank as to payee, and let a friend, agent or stranger sell it in this form to any one, who will put his name in the blank, or else, as in Hill’s case, quietly await a messenger from the usurer to put in circulation this new and popular form of security. If such anomalous paper is taking the place of regular business paper, as has been stated in the argument of the counsel for the appellees, it cannot be too soon extirpated and supplanted by sounder, less factitious and less suspicious securities. It is, therefore, I feel peculiar sensibility and regret that I lack the concurrence of my brothers to stamp the reprobation of this court upon these practices; to denounce these notes in their blank form as incapable of sale to the first holder or payee; and thus to inhibit the growing traffic in them which must eventually make shipwreck of the great cardinal principle forbidding the sale by the maker of his own note.
In conclusion, I cannot find more impressive utterance for my opinion of these cases than to adopt the language of Judge Roane in Taylor, &c., v. Bruce. It is far more applicable to this case than to that. Had he then foreseen the further step that would be taken in these cases to remove the restraints against usury, he could not have applied to it more descriptive language, or used stronger remonstrance. He said, “We have undoubtedly gone far enough in sanctioning the sales of the consummated notes of others, bona fide held by the seller, at a usurious rate of discount. I will not, however, go further and permit a man to sell, not his own note, for a note presupposes a real payee as well as a drawer, but his own blank paper at an illegal rate of discount. I will not by this means disrobe the consideration, on which it is granted, of its usurious taint, and repeal, pro tanto, the act of usury.”
For these reasons, I dissent from the affirmance of the judgments in these cases.
*JOYNES, J. The case of Whitworth v. Adams, 5 Rand. 333, must be considered as settling the law of Virginia on the subject of usury in the purchase and sale of negotiable paper. It was the decision of a majority of a full court, after a most thorough discussion and examination of the subject by each of the judges. Though contrary to decisions in many, if not most, of the States, it was in accordance with the decision of two judges in a court of three in Taylor v. Bruce, Gilm. 42; and for more than forty years it has been acquiesced in by the legislature, and been regarded by the courts and the community as establishing the law. I shall not, therefore, enter into any discussion of the principles involved in that case. Indeed, the authority of that case has not been questioned in the argument.
Whitworth & Yancey made their negotiable note payable to Wilson & Orr, for the accommodation of the payees, who put it into the hands of Belcher, a broker, for sale on their account. Belcher sold the note to Johnson at a discount of three per cent, a month. Johnson, at the time he discounted the note, did not know that it was made for accommodation, nor for whose benefit it was sold. The note had, of course, no binding force in the hands of Wilson & Orr, for whose accommodation it was made, nor in those of Belcher, their agent. It was then but an inchoate instrument, which could only become valid and binding bypassing into the hands of a bona fide holder for value. It ' was conceded by the dissenting judges that a consummated and bona fide note given for value — -a business note — might be sold at any price without violating the statute against usury. But it was contended that as this note was not *857 valid and binding- in the hands of Wilson & Orr, or of Belcher, the same principles did not apply; that there was nothing that could be sold; and that the transaction *was, in substance and effect, a loan to Wilson & Orr of the sum paid by Johnson for the note, upon their obligation, by the endorsement, to pay the sum expressed on the face of the note, and was, therefore, usurious. But the court held, that as Johnson did not know that the note was made for accommodation, or that it was sold for the benefit of a party whose name was upon it, he was to be regarded as a bona fide purchaser from Belcher, the holder and apparent owner of the note, who did not endorse it, and that the transaction was, therefore, substantially the same as the purchase of a business note, and not usurious.
The argument that has been urged upon us with so much earnestness in this case, is substantially the same that was urged bj' the dissenting judges in Whitworth v. Adams and in Taylor v. Bruce. It. was overruled then, and it must be overruled now, unless it can be shown that there is some substantial ground of distinction between this case and those.
It is contended that this case is to be distinguished, on the ground that the note in Whitworth v. Adams, as well as that in Taylor v. Bruce, was regularly filled up with the name of a payee, and endorsed by him; so that it had all the appearance of a complete and valid instrument; whereas the notes in this case were blank as to the name of the payee, and were, therefore, incomplete and imperfect on their face.
In order to determine the weight due to this suggestion, it is necessary to consider the legal character and effect of a negotiable note, which is blank as to the name of the pajme. This is settled by authority in England and in the United States, and is well understood among commercial men. The question as to the effect of such an instrument came before the court of K. B. in the year 1813, in the case of Cruchley v. Clarence, 2 Maule & Sel. R. 90, which is the leading case. That was an action against the ^drawer of a bill of exchange payable to the order of-(the name of the payee being left blank). It was endorsed to the plaintiff by one Vashon, and the plaintiff inserted his own name as payee. It was objected that the plaintiff had no right to insert his name as payee, and the case was distinguished from Russell v. Langstaffe, Dougl. R. 514, because in that case the bill was filled up by one of the original parties. But the court overruled the objection, and held that the plaintiff was entitled to recover. Eord Ellenborough, C. J. : “As the defendant has chosen to send the bill into the world in this form, the world ought not to be deceived by his acts. The defendant, by leaving the blank, undertook to be answerable for it when filled up in the shape of a bill.” Be Blanc, J. : “It is the same thing as if the defendant had made the bill payable to bearer.” Bay ley, J. : “The issuing of the bill in blank, without the name of the payee, was an authority to a bona fide holder to insert the name. ’ ’ Though the bill in this case was endorsed to the plaintiff, the title to it did not pass by the endorsement, because the name of the endorser was not in the bill. It passed by the delivery. In the following year the same question came before the court of C. B. in an action against the acceptor of the same bill. Crutchly v. Mann, 5 Taunt R. 529 (1 Eng. C. L. R. 179). It was objected that the authority given to the person to whom the bill was first delivered, to insert his name as payee, was not transferable from hand to hand. But the court held that the plaintiff had a right to insert his name as payee, and was entitled to recover. Upon the authority of these cases it is laid down in all the treatises, that any bona fide holder of a bill or note which is blank as to the name of the payee, may insert his own name, and thus acquire all the rights of payee.
The same doctrine has often been affirmed in this country. In Ives v. Farmers’ Bank, 2 Allen R. 236, the *defendant signed a printed form of a note, and which, as signed, read as follows:
$1,585.90.
Brooklyn, September 20, 1858. after date, promise to pay to the order of Dec. 23,
dollars at value received: Geo. R. Ives.
The paper in this form was delivered to one Yale, and the defendant alleged that it was delivered to him only as a memorandum, and not to be used as a note. But Yale filled it up so as to make it a note for the sum of $1,585.90, payable to the order of himself three months after date, at the Atlantic Bank, New York, and endorsed it to the plaintiff, who discounted it for his benefit. The court held, upon the authority of the cases just cited, that the paper, as signed by Ives, was a promissory note, importing a complete and valid contract, and that evidence was not admissible to show that it was intended to be only a memorandum, as that would be to vary by parol the meaning of a written instrument. The court, after referring to the cases above cited, and stating the opinion just mentioned as to the character and effect of the paper, said: “If it had been passed to the bank by Yale in the condition in which he received it, it would, therefore, have been a complete note, except the name of a payee, and the bank would have been authorized to fill the blank with any name that they had chosen; and as they took it in good faith, it can make no difference in the rights of any party that the blank was filled by Yale, in order to add his own liability as an endorser.”
White v. Verm. & Mass. R. R. Co., 21 Howard U. S. R. 575, was an action upon coupon bonds issued by the railroad company payable in blank, no payee being inserted. They were issued in Massachusetts *858 to a citizen of that State, and passed through several intervening ^holders to the plaintiff, a citizen of New Hampshire, who inserted his name as payee, and brought suit on the bonds in the Circuit Court of the United States. It was objected, that as the bonds were issued to a citizen of Massachusetts, and as they were not negotiable, or if negotiable, were not payable to bearer, the plaintiff could not sue in the Federal Court. But the court held, that it was ‘ ‘the intention of the company, by issuing the bonds in blank, to make them negotiable and payable to the holder as bearer, and that the holder might fill up the blank with his own name, or make them payable to himself or bearer, or to order. In other words, the company intended by the blank to leave the holder his option as to the form or character of negotiability, without restriction.” * * * “Until the plaintiff chose to fill up the blank, he is to be regarded as holding the bonds as bearer, and he held them in this character until made payable to himself or order. At that time he was a citizen of New Hampshire, and, therefore, competent to bring the suit in the court below.
In this last case the bond passed from hand to hand by delivery while blank as to the payee, as the bill did in Cruchley v. Clarence, and as the court said the note might have done in Ives v. Farmers’ Bank. The instrument, in all these cases, was regarded as payable to bearer, as long as it remained blank. So in Wookey v. Pole, 4 Barn. & Aid. 6 R., (6 Fng. C. E. R. 323,) it was held, that an Exchequer bill payable to —— or order was, until filled up, payable to bearer; and that, while in that condition, it passed by delivery. This construction is made in order to give effect to the intention of the party who sets the paper afloat with a blank for the name of the payee. And upon the same ground, a bill or note payable to the order of a fictitious payee, is regarded as payable to bearer. Gibson & al. v. Minet &"al. 1 H. Bl. R. S69.
In Rex v. Randall, Russ. & Ry. C. C. 195, it was held *that a bill blank as to the payee did not answer the description of a bill of exchange in an indictment. But however that may be, the cases above cited abundantly establish that a party to such a bill is liable upon it .as if it was filled up. It has been held, too, that while a bill or note is blank as to the payee, the holder cannot sue upon it as bearer, but that he must insert his -name as payee. Greenhow v. Boyle, 7 Blackf. R. 56; Seay v. Bank of Tennessee, 3 Sneed R. 558. But these cases fully recognize the doctrine of the case of Crutchley v. Clarence. They only hold that the insertion of the name of the plaintiff, so that the paper may, on its face, import a contract with him, is necessary to enable him to sue upon it. In Rees v. Conococheague Bank, 5 Rand. 326, it was contended that the plaintiff could not recover under an endorsement in blank, without writing over it an assignment to himself. But the argument was overruled, and the court held, that the election of the plaintiff to treat the endorsement as a transfer to himself, is proved as well by suing on the note in his own name, as by writing an assignment to himself over the endorsement. If, however, the insertion of the name of the payee is necessary to enable the plaintiff to sue upon such a note, it is only a matter of form, and may be made, at the trial, as was conceded by the court in the case cited from 3 Sneed.
These cases establish two propositions: 1. That a negotiable note blank as to the name of the payee, imports a contract by the maker of the note to pay the sum expressed in it, which may be transferred like other negotiable paper. 2. That the transfer of such a note may be made by delivery, as if it was, in - express terms, payable to bearer. And this corresponds with the common usage and understanding among merchants. Notes are often taken in blank as to the name of the payee, in order to enable the holder to pass them off without incurring liability *by endorsing them, and without inflicting the injury upon their credit which would result from endorsing them “without recourse.” The same object may be effected, and frequently is, by making the note payable to the order of the maker.
A note blank as to the payee being thus a form of paper legitimately and frequently used in the usual and regular course of business, how can we say that the face of such a note indicates that it was made .for accommodation, or that it ought to excite' suspicion and enquiry in respect to the consideration? And as notes in that form are transferable by delivery, why might not Enders, Sutton & Co., when they found such notes in the hands of Green, regard them as notes given for value and belonging to him, and purchase them accordingly, as if they had been filled up payable to bearer, or filled up to a payee and endorsed by him in blank? On what ground can we hold that a purchaser of such a note takes it at his peril, which would not equally apply to a note regularly filled up with the name of a payee? In Wookey v. Pole, above cited, the fact that the Exchequer bill was blank as to the payee was not held to put the banker upon enquiry as to the title of the party from whom he received it; the title of the banker was put upon the same principle as if the bill had been filled up payable to bearer.
The case of Aude v. Dixon, 6 Exch. R. 869, has been cited to show that when a party takes a note which is blank as to the name of the payee, he takes it at his peril, and cannot claim the protection which the law gives to the bona fide holder of a note that is complete and perfect on its face. That was an action against William Dixon as the maker of a promissory note. It was proved that Richard Dixon, the brother of the defendant, being- desirous of borrowing ^100 oh the security of a promissory note, applied to the defendant to become one of his securities, *859 *which he agreed to do on the representation of his brother that one Robinson would become his co-surety, and that the defendant should not be responsible unless Robinson joined in the note. On the faith of that representation, the defendant signed the following blank instrument, leaving a space for Robinson as the first signature: “-December, 1848. On demand we do hereby jointly and severally promise to pay to Mr.- — , or order, X100. As witness our hands. William Dixon.” Robinson refused to sign the paper, and Richard Dixon took it in its imperfect state to the plaintiff, who advanced the money upon it, upon Richard Dixon’s representation that he had authority to deal with it. The blanks were filled up by inserting “26” before “December,” and the name of the plaintiff as payee. It was held that the plaintiff could not recover, on the ground that Richard Dixon had only a limited authority to make the paper a binding instrument as to the defendant ; that is, on the condition that Robinson would sign it as co-security. Parke, B., delivering the opinion in which Alderson, B., and Platt, B., concurred, said, “A party7 who takes such an incomplete instrument cannot recover upon it, unless the person from whom he received it had a real authority to deal with it. There was no such authority in this case, and unless the circumstances show that the defendant conducted himself in such a way as to lead the plaintiff to believe that the defendant’s brother had authority, he can take no better title than the defendant’s brother could give. The maxim of law is, 'nemo plus juris in alium transferre protest quam ipse habet. ’ It is a fallacy to say that the plaintiff is a bona fide holder for value; he has taken a piece of blank paper, not a promissory note. He could only take it as a note under the authority7 of the defendant’s brother, and he had no authority; consequently the instrument is void as against the defendant.” During *theargument, Parke, B., said: “Suppose Richard Dixon had authority to fill up the instrument with £100, and he inserted £200, would the defendant be liable ? In the case of Rex v. Hart, 1 Mood. C. C. 486, all the judges were unanimously of opinion, that where a blank acceptance is delivered to a person with authority to fill it up with a particular sum, and he inserts a larger sum, he is guilty of forgery.”
It is apparent from this statement, that Aude v. Dixon was wholly unlike the present case. The defendant in that case never intended to be bound to any body by the instrument as it stood; he only intended to be bound along with Robinson. The negotiation of the paper and the insertion of the name of the plaintiff as payee were, therefore, without authority. The face of the paper showed what was, at least, the original intention of the defendant, and the court held him bound to enquire whether that intention had been changed. In the case of a note blank only as to the name of the payee, the face of the paper indicates that the maker intends to be bound to any person who may be the holder, and an authority is implied to any bona fide holder to fill it up with his name as payee. In the latter case, the paper on its face imports a contract binding on the party whose name is signed to it; in the former, it imports no such contract, in the view which was taken by the court in Aude v. Dixon.
Some of the grounds assigned for the decision in Aude v. Dixon have a bearing on this case, but they are inconsistent with well settled principles. Thus it was said that the plaintiff could not be a bona fide holder because he took a blank piece of paper and not a promissory note. That is inconsistent with numerous cases, which hold that where a signature is affixed to a blank paper, with authority to write a promissory note over it, a party who takes it bona fide and for value after it is filled up, will have all *the rights of a bona fide holder, though he knows that the paper was blank when signed and filled up afterwards. Fant v. Miller & Mayhew, 17 Gratt. 47, 80, and cases cited; Story Prom. Notes, section 122.
It was also said that if a person signs a blank with authority to fill it up as a note for £100, and it is filled up as a note for £200, he will not be liable. This is contrary to numerous cases in England and in this country. Montague v. Perkins, 22 Eng. L. & Eq. R. 516; Barker v. Sterne, 9 Exch. R. 684; Putnam v. Sullivan & al., 4 Mass. R. 45; Fullerton v. Sturges, 4 Ohio R. (N. S.) 529; Fanning v. Farmers and Merchants Bank of Memphis, 8 Sm. & Mar. R. 139; Van Duzer v. Howe, 21 N. York R. 531; 1 Parsons Notes and Bills, 111-115. And in such a case the title of the bona fide holder will not be affected by the agreement as to the amount for which the note was to be filled up, and of which he had no notice, although he knew the fact that the signature was affixed to a mere blank. 4 Mass. R. 45; 4 Ohio R. (N. S.) 529; 8 Sm. & Mar. R. 139. And so the doctrine that the filling up of a note over a blank signature for a larger sum than that authorized, is a forgery, is contrary to the decision in Putnam v. Sullivan & al. supra.
I think, therefore, that I am warranted in saying, that so far as Aude v. Dixon contains anything that can be regarded as adverse to the views I have advanced in this case, it is entitled to no weight as authority.
It is proper to notice in this connection the case of Hatch v. Searles, 31 Eng. L. & Eq. R. 219, which may be supposed to furnish some support to Aude v. Dixon. That was the case of a claim presented in an administrator’s suit by the endorsee of a bill of exchange against the acceptor’s estate. The reporter in his head note to the case states the ground of the decision to be, that as the holder of the bill, who was an endorsee, was aware, when *he took the bill, that the acceptance had been given in blank, he must be taken to *860 have had as full knowledge of all the circumstances of the origin of the bill, and of the want of title in his endorser, as he might have acquired if he had made proper enquiry. If the decision involved this principle, it is inconsistent with the cases before cited. But it is remarkable that if the Bords Justices rested their decision on this principle, neither of them mentions it in his opinion. The case was decided on the ground that the circumstances under which the holder of the bill received it, were such as ought to have excited suspicion and led to enquiry. But the fact’ that the acceptance was in blank, was not mentioned as one of those circumstances.
It was further contended in the argument, that as Enders, Sutton & Co. have chosen to insert their names in the notes as payees, so as to indidate a transaction directly between themselves and the makers, and have, in their declaration, described themselves as payees, they cannot be allowed to repel the defence of usury, by showing that, in point of fact, they had no transaction with the makers, but obtained the notes by transfer from a previous holder. It was said by counsel that the plaintiffs attack in the character of payees, and defend in the character of endorsees, and that the law will not allow them thus to assume inconsistent positions.
There is no force in this objection. The question is, whether the transaction under consideration was a loan of money at an illegal rate of interest, or a lawful purchase of notes at a discount. To ascertain this, we must look at the real facts of the transaction, and not at its mere form. If a transaction amounts, in substance and effect, to a loan of money at more than legal interest, the consequences cannot be evaded by any form it may be made to assume. If, on the other hand, there was really no loan of money, but only a lawful purchase of notes at a discount, *the mere form of the transaction will not involve the party in the penalties of usury, which, in point of fact, he has not been guilty of.
Moreover, the law does not hold that the true relations between the parties to a negotiable instrument are conclusively indicated by its form. Thus, if it appears on the face of the bill or note sued on that the plaintiff was the immediate promisee of the defendant, it is admissible for the plaintiff to show by evidence aliunde that he was not such immediate promisee in point of fact, but that the paper came to him through other hands, and thus exclude evidence that might otherwise be given to impeach the consideration. 1 Pars. Notes and Bills, 180-183; Beading Cases on Pleading, notes to Peacock v. Rhodes & al. This principle is recognized in Nelson v. Cowing, 6 Hill R. 336. In Pindar v. Barlow, 31 Verm. R. 529, the note was given by the defendant for the price of intoxicating liquors sold to him by one Meech, who had no license to sell liquor. Meech took the note payable to the plaintiff, because he intended to transfer it to him in payment of a debt which he owed him; which he did two days after its date; the plaintiff not knowing that the note was. given for intoxicating liquor. The defendant insisted that the note was void in the-hands of the plaintiff under the statute of Vermont. It was held that a note given for the price of intoxicating liquor was. void, under the statute, in the hands of the original party, but not in the hands of a bona fide holder for value. And it was held that as the plaintiff, in point of fact, received the note by transfer from Meech, he was entitled to recover, though the note was paj'able, on its face, to him or bearer.
I am of opinion, therefore, that no reason has been shown why the principles of Whit-worth v. Adams should not be applied to this case. The case of *Williams v. Reynolds, 10 Maryland R. 57, which was cited to show that those principles should not be applied to the purchase of a note blank as to the payee, has no such bearing. That case was decided in conformity with the doctrine of the New York cases, which were repudiated in Whitworth v. Adams.
It has been strenuously insisted that Enders, Sutton & Co. were not authorized to insert their names in the notes as payees, because they were not bona fide holders. If they acquired the notes through a usurious transaction, they were not bona fide holders. But the purchaser of a note from one whose name is not upon it, at any discount, however great, is not, of itself, usurious. Such a purchaser, if he does not violate the usury law, may be a bona fide holder, as well as if he had bought the note at its face value. To say that Enders, Sutton & Co. acquired these notes through a usurious transaction, is to assume the very point in controversy. No other ground has been alleged to impeach their title as bona fide holders.
It has been urged that if we sustain the present transaction, we shall give our sanction to an eas3r device by which a man may sell his own note, and evade the statute of usury. I reply that this objection applies, as do most of the arguments urged in this case, to the case of Whitworth v. Adams. Under the decision in that case a man may make a note payable to his own order, and endorse it and sell it through a third person at any price, without involving a violation of the usury law, provided the purchaser does not know that the note is sold for the benefit of the maker. So a man' may make his note to a friend who endorses it for his accommodation, and sell it in the same way. The present case only illustrates another mode of doing substantially the same thing. The blame, if any *is due, must rest upon the case of Whitworth v. Adams, which I do not feel at liberty to overrule, for the reasons already mentioned.
The instruction of the court in this case was in strict accordance with Whitworth v. Adams. The instructions moved by the *861 defendants and refused by the court, were inconsistent with that case, and were, therefore, properly refused.
I am of opinion that the judgment of the District Court should be affirmed.
Brummel & Co. v. James Gray's Sons.
This case depends on the same legal principles as Brummel & Co. v. Enders, Sutton & Co., just decided. It differs in the facts in this, that the evidence in this Case was that one of the plaintiffs purchased the note from a broker, who told him that it had been given by the defendants for wheat sold to them by a person who wished to leave town, and left it with the broker for sale. The jury have found that the purchaser did not know that this representation was untrue, and there does not appear from the evidence certified, to have been anything to excite his suspicion that it was not so, unless the mere fact that the note was blank as to the name of the payee was sufficient of itself to put him upon enquiry, notwithstanding the representation. Such a principle would destroy the circulation of such notes altogether.
The judgment should be affirmed.
Brummel & Co. v. Hill’s Ex’or.
This case depends on the same principles as the other two cases just decided. It differs on the facts in these particulars: 1. That Hill applied to Green to know if he had any of Brummel’s notes, saying that he wanted to buy one ; that Green said that he could get one, and did *so. 2. That Green owed Hill a note, the amount of which was allowed by Green to Hill as part of the proceeds of the note sold to him; and that Green promised to endorse the note if requested. The first of these facts may be supposed to indicate that Hill expected to get a note that was made for sale, but the others have a tendency to show that he understood that the note he was buying was the property of Green. But the jury have found that Hill did not know that the note was made to be sold for the benefit of the makers.
The judgment should be affirmed.
MONCURE, P., concurred in the opinion of Joynes, J.
Judgments affirmed.